# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARCIA C. FALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2805 |
| v. | ) | |
| | ) | **Magistrate Judge** |
| NANCY A. BERRYHILL, Acting | ) | **Maria Valdez** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration denying Plaintiff Marcia C. Falls's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, Plaintiff's motion for summary judgment is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

In August 2012, Plaintiff filed her application for DIB, alleging disability since November 1, 2011 due to anxiety, depression, a back condition, and arthritis in the right knee. (R. 120, 149, 230.) Her application was denied initially and again upon reconsideration. (R. 145–54.) Plaintiff then requested a hearing and appointed Verlee Nathaniel (who is not an attorney) as her representative. (R. 155–56, 167.)

On March 7, 2014, Plaintiff appeared for a hearing before an ALJ. (R. 109–19.) Although Plaintiff was accompanied by Ms. Nathaniel, she was not represented by counsel. (R. 111–12.) During the hearing, the ALJ did not take substantive testimony related to Plaintiff's disability claim; instead, she discussed Plaintiff's rights regarding representation, provided Plaintiff with a list of legal service organizations, and gave Plaintiff a computer disc containing her medical records to review. (R. 112–17.) The ALJ then continued the hearing. (R. 117–19.)

The hearing resumed over a year later, on May 13, 2015. (R. 42–108.) Plaintiff, intending to be represented by Ms. Nathaniel, again appeared without counsel. (R. 44–47.) However, after the ALJ explained that Ms. Nathaniel could not testify on Plaintiff's behalf while representing her, Plaintiff decided to represent herself. (R. 49–50.) Plaintiff and Ms. Nathaniel both gave testimony at the hearing. (R. 52–80, 93–94.) In addition, two medical experts ("ME") testified: Joseph McKenna, M.D., testified regarding Plaintiff's physical limitations, and Michael Carney, Ph.D., testified regarding Plaintiff's mental limitations. (R. 80–97, 1694–95.) Thomas Dunleavy, a vocational expert ("VE"), also testified. (R. 98–106.) On July 30, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (R. 16–41.) The Appeals Council denied review on February 13, 2017. (R. 1–5.)

## II.    ALJ DECISION

In determining that Plaintiff was not disabled, the ALJ analyzed Plaintiff's claim according to the five-step sequential evaluation process established under the Act. (R. 20–21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2011, her alleged disability onset date. (R. 21.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease, right knee arthritis, mild obstructive sleep apnea, major depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), personality disorder, and alcohol abuse. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[1] (R. 24.) At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. (R. 35.) At step five, the ALJ found that,

---

[1] At this stage, the ALJ limited Plaintiff to

> no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; avoid[ing] concentrated exposure to hazards; no more than simple, routine, repetitive tasks in a work environment free of fast paced production requirements; no more than simple work-related decision making with few, if any, changes in the work setting; and no more than occasional contact with supervisors, co-workers, and the public.

(R. 24.)

considering Plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines, there are jobs existing in significant numbers in the national economy that she can perform, including housekeeping cleaner, cafeteria attendant, and laundry sorter. (R. 36–37.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (R. 37.)

**DISCUSSION**

## I.   ALJ STANDARD

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation (i.e., past work)? and (5) Is the plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden then shifts

to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    JUDICIAL REVIEW

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" so long as "the decision is adequately supported") (internal citation and quotations omitted).

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning.") (internal citations omitted).

In reviewing the ALJ's decision, the Court plays an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even so, an ALJ must consider all relevant evidence, and it cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Plaintiff argues that remand is appropriate because the ALJ: (1) did not obtain a valid waiver of Plaintiff's right to counsel and did not ensure that the record was fully developed; (2) failed to support her physical and mental RFC assessments with substantial evidence; (3) improperly assessed Plaintiff's credibility. For the reasons that follow, the Court disagrees.

## A.   Waiver and the ALJ's Development of the Record

A disability claimant has the statutory right to be represented by counsel at an administrative hearing. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). If properly informed, though, the claimant may waive this right. *Id.* To ensure that a claimant validly waives her right to counsel, the Seventh Circuit requires an ALJ to explain "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.*

Although Plaintiff concedes that the ALJ described her right to representation at both hearings, she contends that the ALJ did not obtain a valid waiver of this right because she did not (1) inform Plaintiff that attorney fees are capped or (2) explain how an attorney could present Plaintiff's case in the best possible light.[2] Plaintiff also contends that her waiver of counsel was invalid because the ALJ failed to inform her at the first hearing that Ms. Nathaniel could not testify as a witness if she was also representing Plaintiff.

Plaintiff's contentions are unpersuasive. First, Plaintiff ignores the documents the ALJ sent to her in January 2014 and April 2015 about her upcoming hearings. (R. 168–82, 185–200.) Both sets of documents included a two-page

---

[2] Plaintiff does not cite any legal authority requiring an ALJ to explain how an attorney could present a claimant's case "in the best possible light." Instead, an ALJ is only required to explain "the manner in which an attorney can aid in the proceedings." *Binion*, 13 F.3d at 245. The Court addresses Plaintiff's waiver argument in accordance with this standard.

pamphlet entitled "Your Right to Representation" (R. 174–75, 191–92), which explains "the right to counsel, the benefits of representation, and limitations on fees—including the 25%-limitation—in rather simple and straightforward language." *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1141 (N.D. Ill. 2012). Regarding the 25 percent cap, the "Your Right to Representation" pamphlet explains:

- that the Social Security Administration ("SSA") will approve a fee agreement with a representative if, among other things, the fee "is no more than 25 percent of past-due benefits or $6,000, whichever is less";

- that if a representative is eligible for direct payment, the SSA will "usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee" and that the SSA pays "all or part of the representatives from the money and send[s] you any money left over"; and

- that if a claimant appeals her claim to federal court, the fee allowed by the court will usually "not exceed 25 percent of all past-due benefits that result from the court's decision."

(R. 174–75, 191–92.) The pamphlet further explains the ways "in which an attorney can aid in the proceedings." *Binion*, 13 F.3d at 245. Specifically, it explains that a representative, such as an attorney, can help a claimant by getting information from her Social Security file; obtaining medical records or other information to support her claim; accompanying her to any interviews, conferences, or hearings; requesting reconsideration, hearing, or Appeals Council review; preparing her and her witnesses for a hearing; and questioning any witnesses. (R. 174, 191.)

Plaintiff acknowledged receipt of the "Your Right to Representation" pamphlet on both occasions via signed and returned acknowledgements, (R. 183, 206), and in her briefs, Plaintiff does not deny having received them. In these circumstances, the ALJ satisfied her obligation to inform Plaintiff of the twenty-five

percent cap on attorneys' fees and the ways "in which an attorney can aid in the proceedings." *Binion*, 13 F.3d at 245; *see, e.g.*, *Moore*, 851 F. Supp. 2d at 1141 (finding a valid waiver where the claimant acknowledged receipt of "Your Right to Representation" via a signed and returned receipt); *Peters v. Berryhill*, No. 16 C 6901, 2018 WL 1762442, at *6 (N.D. Ill. Apr. 12, 2018) (finding a valid waiver "where there is a signed acknowledgement of receipt" of "Your Right to Representation" and the claimant conceded that he received the pamphlet).

Second, the ALJ explained to Plaintiff how an attorney representative could help her with her case at both hearings. At the first hearing, the ALJ explained that an attorney or non-attorney representative could help Plaintiff obtain information about her disability claim, submit evidence, explain medical terms to her, help protect her rights, make requests and give notices about the proceedings, and file briefs explaining the legal theory of the case. (R. 113–14.) At the second hearing, the ALJ reiterated that an attorney or non-attorney representative could help Plaintiff obtain information about her claim, submit evidence, explain medical terms, help protect her rights, and make any request or give any notice about the proceedings. (R. 47–48.) Plaintiff indicated that she understood these explanations (R. 48–49, 113–15), which all identify ways "in which an attorney can aid in the proceedings." *Binion*, 13 F.3d at 245.

Third, Plaintiff does not cite any legal authority that required the ALJ to inform her that Ms. Nathaniel could not serve as both a witness and her representative. Nor is there any indication that Plaintiff would have obtained

attorney representation had she been so informed at the first (as opposed to the second) hearing. To the contrary, after informing Plaintiff that Ms. Nathaniel could not be both a witness and a representative, the ALJ explained that Plaintiff could choose to continue the case so that she could "find somebody else to represent" her. (R. 49.) Plaintiff, instead, opted to represent herself and proceed. (*Id.*) Thus, Plaintiff specifically declined the chance to seek attorney representation even after she knew that Ms. Nathaniel could not represent her and testify at the same time.

Plaintiff has failed to show that her waiver of counsel was invalid. That, however, does not end the Court's inquiry, as Plaintiff further contends that the ALJ failed to fully develop the record. Regardless of whether a claimant validly waives her right to counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" when a claimant proceeds unrepresented. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal quotations and alterations omitted); *Binion*, 13 F.3d at 245. Nonetheless, if a claimant validly waives her right to counsel, she then bears the burden to show that the ALJ failed to fulfill her duty to fully and fairly develop the record. *Peters*, 2018 WL 1762442, at *6. To meet this burden, Plaintiff must demonstrate a prejudicial omission in the record; otherwise, the Court will generally uphold the ALJ's determination regarding the gathering of evidence. *Nelms*, 553 F.3d at 1098; *Johnson v. Colvin*, No. 15 C 2155, 2016 WL 5940927, at *3 (N.D. Ill. Oct. 13, 2016).

Plaintiff contends that three types of documents were omitted from the evidentiary record: (1) a sleep study and prescription for a continuous positive air

pressure ("CPAP") machine; (2) approximately fourteen months' worth of psychiatric records from the Department of Veterans Affairs ("VA"); and (3) records regarding classes she took at the University of Phoenix. But Plaintiff makes no attempt to demonstrate how the purported absence of these documents prejudiced her. She does not explain how documentation regarding her sleep study or her CPAP prescription would offer anything different from Ms. Nathaniel's testimony that Plaintiff suffered from mild sleep apnea and was given a CPAP machine. (R. 79.) Nor does Plaintiff explain how the purportedly missing VA records would have impacted the ALJ's findings regarding her mental symptoms and limitations. Similarly, she does not even try to explain how her University of Phoenix records would have affected the ALJ's findings regarding her limitations.

The record also contradicts Plaintiff's assertion that "[t]here is no indication in the file that the ALJ attempted to obtain documents and that there were none available." (Pl.'s Br. in Supp. at 7.) At the end of the first hearing, the ALJ stated that she would have her clerks contact the VA "to request any updated treatment records between now and the next hearing." (R. 117.) At the second hearing, after the psychological ME's testimony about an apparent lack of post-February 2014 VA psychiatric records, the ALJ again stated that she would request updated records from the VA. (R. 92–93, 106–07.) The ALJ also indicated that she would make her decision once she obtained these additional records. (R. 107.) It appears the ALJ did so: she obtained records from the VA after the second hearing yet before she rendered her decision. (*See* R. 41 (identifying Exhibit 11F with her decision); R. 50–

51 (moving Exhibits 1F through 10F into evidence).) Although Exhibit 11F consists of only four pages of records, these records are from October 2013 and March 2015; in other words, they span most of the period (between February 2014 and the May 2015 hearing) for which the psychological ME believed VA records might be missing. (R. 42, 92–93, 1696–99.) Contrary to Plaintiff's claim, it appears the ALJ requested and received additional documents from the VA that were not in the record at the time of the second hearing.

In conclusion, Plaintiff has failed to demonstrate that the ALJ obtained an invalid waiver of counsel. Because of this failure, it was Plaintiff's burden to show that the ALJ failed to fully and fairly develop the record by explaining how the omission of evidence prejudiced her. *See Peters*, 2018 WL 1762442, at *6; *Johnson*, 2016 WL 5940927, at *3. She did not do so. As such, the Court finds no error in the ALJ's development of the evidentiary record.

### B.     The ALJ's RFC Assessment

The RFC is an administrative assessment of what work-related activities a claimant can perform despite her physical and mental limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ makes this assessment "based upon medical evidence in the record and other evidence, such as testimony by the claimant or [her] friends and family." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, the ALJ's RFC assessment of Plaintiff's physical limitations restricts her to "light work" as defined in 20 C.F.R. § 404.1567(b) subject to various postural

12

and environmental limitations. (R. 24.) As for Plaintiff's mental limitations, the ALJ's RFC assessment restricts her to "simple, routine, repetitive tasks in a work environment free of fast paced production requirements," "simple work-related decision making with few, if any changes in the work setting," and "occasional contact with supervisors, co-workers, and the public." (*Id.*) Although Plaintiff alleges several errors regarding these restrictions, none warrant remand.

### 1. *Physical RFC*

Plaintiff first attacks the ALJ's assessment of her physical limitations by arguing that it is not consistent with any medical opinion in the record. The ALJ's assessment, however, largely follows the medical opinion of Lenore Gonzalez, M.D., a non-examining state agency consultant who reviewed the medical evidence. Even where it deviates from Dr. Gonzalez's opinion, the physical RFC is still supported, as it is more restrictive than Dr. Gonzalez's opinion in these instances. *See Poole v. Colvin*, No. 12 C 10159, 2016 WL 1181817, at *9 (N.D. Ill. Mar. 28, 2016) ("[T]he medical opinions of record supported the ALJ's determination because those opinions found Plaintiff to have a *greater* capacity than that ultimately ascribed by the ALJ.") (emphasis in original).

Dr. Gonzalez opined that Plaintiff was capable of occasionally lifting and carrying twenty-five pounds; frequently lifting and carrying ten pounds; and standing or walking for a total of six hours in an eight-hour workday. (R. 138.) This opinion supports the physical RFC's restriction to light work, which requires lifting no more than twenty pounds at a time (a restriction more favorable to Plaintiff than

Dr. Gonzalez's opinion), frequent lifting or carrying of up to ten pounds, and standing or walking for a total of approximately six hours. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *6 (1983). Dr. Gonzalez also opined that Plaintiff could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally stoop, crouch, kneel, and crawl; had no limitations on balancing; and should avoid concentrated exposure to hazards. (R. 138–39.) The physical RFC similarly restricts Plaintiff to occasional climbing of ramps and stairs, but never ladders, ropes, or scaffolds; occasional stooping, crouching, kneeling, and crawling; and avoiding concentrated exposure to hazards. (R. 24.) The physical RFC's occasional balancing restriction is also supported by Dr. Gonzalez's opinion, as Dr. Gonzalez opined that Plaintiff had no limitations on balancing. (R. 24, 139); *see Poole*, 2016 WL 1181817, at *9. Accordingly, Dr. Gonzalez's opinion provides a proper foundation for the ALJ's physical RFC assessment. *See Dampeer v. Astrue*, 826 F. Supp. 2d 1073, 1085 (N.D. Ill. 2011) (finding that an RFC limiting plaintiff to sedentary work was supported by substantial evidence where state agency doctors concluded that the plaintiff could perform light work with certain limitations).[3]

---

[3] The Court notes that the ALJ incorrectly characterized Dr. Gonzalez's findings as limiting Plaintiff to medium work and, based on this characterization, stated that she could not give much weight to the findings. (R. 33.) This mischaracterization notwithstanding, the ALJ's physical RFC assessment tracks many aspects of Dr. Gonzalez's opinion, which indicates that the ALJ did in fact rely upon this opinion. Plaintiff also does not contend that the ALJ's mischaracterization precludes Dr. Gonzalez's opinion from supporting the ALJ's physical RFC assessment. As such, the ALJ's mischaracterization is, at most, harmless error, as the Court is confident that, on remand, the ALJ would accurately describe Dr. Gonzalez's opinion and note how it supports her physical RFC assessment, leading to the same result here. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Next, Plaintiff contends that Dr. Coulson, a VA physician who examined her, concluded that her physical impairments limited her functionality (particularly weightbearing activities), and later opined that Plaintiff had range of motion limitations that precluded rigorous physical activity (although not sedentary work). Plaintiff also identifies a 2013 VA examination purportedly showing that the range of motion in her affected joints decreased with repetitive use testing. The problem with this argument, however, is that Plaintiff does not explains how these opinions or examinations justify a physical RFC more restrictive than the ALJ's. *See Penrod ex rel. Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018) (rejecting as conclusory and meritless plaintiff's argument regarding the ALJ's failure to consider a medical opinion where she failed to "say what additional limitations the ALJ should have included in the RFC analysis"); *Weaver v. Berryhill*, --- F. App'x ----, 2018 WL 3996853, at *3 (7th Cir. Aug. 20, 2018) (unpublished decision) (stating that the plaintiff must provide evidence that her conditions "support specific limitations affecting her capacity to work"). Nor does Plaintiff challenge the ALJ's decision to give "little weight" to the one finding that, on its face, could be more restrictive than the physical RFC: Dr. Coulson's conclusion that Plaintiff would not be prevented from sedentary work. (R. 33, 1282.) Thus, Plaintiff has not shown how the ALJ erred in her treatment of Dr. Coulson's opinion or the 2013 VA examination.

Finally, Plaintiff has waived any contention that the ALJ improperly failed to include any limitations related to sitting. Although Plaintiff's opening brief asserted that the physical RFC improperly omitted sitting limitations in the "Issues

Presented" section and in an argument header, Plaintiff failed to substantively develop this assertion in any way. Only after the Commissioner pointed out this failure did Plaintiff, in her reply, set forth argument and identify supporting evidence on this issue. Because there was no reason Plaintiff could not have done this in her opening brief, this argument is waived. *See Rogers v. Barnhart*, 446 F. Supp. 2d 828, 851 (N.D. Ill. 2006) (applying waiver to an argument that was first advanced in a reply brief); *see also Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (holding that perfunctory and undeveloped arguments are waived). Accordingly, Plaintiff has failed to show any reversible error in the ALJ's physical RFC assessment.

### 2.      *Mental RFC*

Turning to Plaintiff's mental RFC arguments, Plaintiff first contends that the ALJ's mental RFC assessment is erroneous because the ALJ did not properly evaluate the evidence underlying Plaintiff's VA disability rating. In early 2012, after she was discharged from the United States Army, Plaintiff underwent treatment and presented for examinations at the VA. (R. 54–55, 850–51.) In June 2012, the VA issued a disability rating decision, which assigned Plaintiff an overall 90 percent service-connected disability rating. (R. 850–57, 861.) Relevant to Plaintiff's mental capabilities, the VA assigned Plaintiff a 50 percent service-connected disability rating based on her major depressive disorder with anxiety disorder. (R. 851–52, 860.) Although the ALJ considered the VA disability rating decision, she found it unpersuasive. (R. 30.) With respect to the VA's 50 percent

disability rating based on Plaintiff's depression and anxiety, the ALJ determined that the evidence as a whole showed that Plaintiff's "functioning improves with treatment and compliance and that she can perform work-related functions with some mental limitations." (*Id.*) The ALJ also discounted the VA's disability ratings because the VA used a "more deferential standard for evaluating subjective complaints" than that used by the SSA. (*Id.*) This meant that the VA's ratings were skewed by Plaintiff's subjective complaints, which the ALJ found were not fully credible under the "more rigorous credibility standards required by SSA regulations and policy." (*See* R. 30–31.)

Plaintiff argues that remand is necessary because, in evaluating the VA disability rating, the ALJ improperly ignored records demonstrating that Plaintiff still experienced significant, ongoing psychological symptoms even when she complied with her psychiatric medications and other treatments. The Court disagrees. The ALJ indicated that she considered the evidence of record as a whole and in any event, the ALJ was not required to mention every piece of evidence, so long as she built a logical bridge from the evidence to her conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did that: she indicated that the VA disability ratings were undermined by evidence of Plaintiff's improved functioning with treatment and her ability to perform work-related functions with some mental limitations, and she further explained that Plaintiff's less-than-credible subjective complaints, which impacted the VA ratings decisions, caused her to question these ratings.

Plaintiff also fails to explain how the allegedly ignored evidence would have affected the ALJ's evaluation. As noted above, the ALJ reasoned, in part, that the evidence showed functional improvement with treatment and compliance. Even if the evidence also showed continued psychological symptoms (despite treatment and compliance), ongoing symptomology does not equate to functional impairment. In other words, the mere existence of those symptoms did not necessarily preclude Plaintiff from performing work-related functions or improving in her performance of these functions. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("A person can be depressed, anxious, and obese yet still perform full-time work."). Notably, Plaintiff does not argue that the allegedly ignored evidence demonstrates that her work-related functioning, as opposed to her symptoms, failed to improve with treatment and compliance.

Presumably, Plaintiff believes that had the ALJ considered the evidence at issue, she would have given the VA disability ratings greater weight. But Plaintiff does not explain how these ratings, expressed in percentages, would translate into additional restrictions that should have been included in the mental RFC or would support "specific limitations affecting her capacity to work," as was her burden. *See Weaver*, 2018 WL 3996853, at *3.

Next, Plaintiff contends that the ALJ failed to adequately explain her failure to restrict Plaintiff in a manner consistent with the opinions of the state agency psychological consultants, Darrell Snyder, Ph.D. and Howard Tin, Psy.D. Both consultants opined that Plaintiff's "ability to sustain concentration and carry out

routine, repetitive *tasks of 1-2 steps would be intact* but she would make increasing errors with more difficult tasks." (R. 128, 142 (emphasis added).) The consultants further opined that Plaintiff's contacts with the public and supervisors must be "brief and superficial." (*Id.*) Although the ALJ limited Plaintiff to "simple, routine, repetitive tasks" in her RFC assessment and hypothetical questions to the VE, she did not explicitly restrict Plaintiff to one-to-two step tasks. (R. 24, 101, 103–04.) Nor did the ALJ include a "brief and superficial" restriction for contact with the public and supervisors; instead, she limited Plaintiff to occasional contact with supervisors, coworkers, and the public. (*Id.*)

The ALJ's omission of the consultants' one-to-two step task and "brief and superficial" contact restrictions does not require remand. The ALJ was not obligated to adopt every restriction offered by the state agency consultants. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion[.]"); *Reyes v. Colvin*, No. 14 C 7359, 2015 WL 6164953, at *13 (N.D. Ill. Oct. 20, 2015) ("The rule in this circuit is that an ALJ may choose to adopt only parts of a medical opinion[.]") (internal quotations and alteration omitted). Indeed, the ALJ only gave the consultants' opinions "some weight" (R. 33), indicating her intention to adopt some, but not all, of their proposed restrictions. *See Maxwell v. Berryhill*, No. 16 C 6101, 2017 WL 4180340, at *8 (N.D. Ill. Sept. 21, 2017) (finding that the ALJ's adoption of some, but not all, of a consultant's limitations indicated that she gave "some weight" to the consultant's findings). She was permitted to do so. *See id.*; *Reyes*, 2015 WL 6164953, at *13.

Furthermore, the ALJ specifically explained why she rejected the consultants' "brief and superficial" contact restriction: it seemed to contradict their finding that Plaintiff only exhibited mild limitations in her daily living activities and because Plaintiff "attends classes in person at the University of Phoenix, lives with her partner and four young children, and at least at times, watches the children while her partner works." (R. 33–34.) This explanation was not illogical, as Plaintiff contends. In analyzing Plaintiff's daily living activities, the ALJ considered that Plaintiff attended classes in person for five to six weeks at a time and watched her partner's children. (R. 23.) The ALJ could have reasonably found that Plaintiff's ability to attend classes in person, live with five other people, and watch and take care of four children was inconsistent with a purported inability to be around others for more than a "brief and superficial" amount of time.

In any event, Plaintiff has not shown that any error in the ALJ's failure to explicitly adopt the restrictions at issue requires remand. *See McKinzey*, 641 F.3d at 892 ("[A]dministrative error may be harmless."). To start, Plaintiff makes no attempt to explain how a brief and superficial contact restriction would preclude any of the jobs identified by the ALJ. As for the one-to-two step task restriction, the VE testified that an individual with Plaintiff's restrictions could work as a housekeeping/cleaner, which, as Plaintiff concedes, has a Reasoning Development Level of 1. (R. 36, 101–04). And even those claimants that are limited to performing one-to-two step tasks can perform Reasoning Development Level 1 occupations such as housekeeping/cleaner. *See Perry v. Colvin*, 945 F. Supp. 2d 949, 964 (N.D. Ill.

2013) (explaining that a one-to-two step task restriction "translates to reasoning level 1"); *Tincher v. Berryhill*, No. 16 C 7305, 2018 WL 472447, at *6 (N.D. Ill. Jan. 18, 2018) (noting that several courts in this District have concluded that a one-to-two-step task limitation is consistent with Reasoning Development Level 1).[4] The VE further testified that there are a significant number of housekeeping/cleaner jobs—over 10,000—in Illinois. (R. 102); *see Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (finding 4,000 jobs significant and noting that "it appears to be well-established that 1,000 jobs is a significant number"). Thus, even if Plaintiff were restricted to one-to-two step tasks, there still existed a significant number of jobs that she could perform. *See Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) (unpublished decision) (finding harmless error because 2,000 jobs would remain available); *Baker v. Colvin*, No. 13 C 311, 2015 WL 719604, at *5 (N.D. Ill. Feb. 18, 2015) ("[E]ven if the ALJ had adopted the RFC limitations in the state agency consultants' reports, the ALJ would still find that [the claimant] is not disabled because jobs exist in the regional economy for someone with those limitations.").

Lastly, Plaintiff contends that the ALJ failed to explain how the mental RFC adequately accommodated her moderate limitations in social functioning and maintaining concentration, persistence, or pace. Plaintiff, however, fails to explain why these limitations are not adequately accommodated by the mental RFC or to identify additional restrictions that would adequately accommodate her limitations.

---

[4] Plaintiff does not argue otherwise; she merely contends that the housekeeping/ cleaner occupation requires light work, which is not supported by substantial evidence. The Court has already rejected Plaintiff's argument that the ALJ's light work restriction is not supported.

*See Penrod*, 900 F.3d at 478; *see also Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011) (the claimant "bears the burden of proof regarding [her] disabling conditions"). For instance, although Plaintiff appears to contend that the "simple" instruction and task restrictions do not adequately address her moderate limitations in concentration, persistence, or pace, she does so without any further elaboration. Similarly, Plaintiff sets forth specific examples that purportedly reflect her troubles interacting with others, but she never provides any developed argument as to why these troubles are not sufficiently accommodated by the mental RFC's restriction to occasional contact with the public, coworkers, and supervisors. Simply asserting error without more, as Plaintiff has done, is not enough. *See Crespo*, 824 F.3d at 674 (perfunctory and undeveloped arguments are waived); *McMurtry v. Berryhill*, No. 16 C 8462, 2018 WL 2320929, at *3 (N.D. Ill. May 22, 2018) ("Due to the conclusory nature of Plaintiff's argument, and her lack of analysis, the Court finds that no error occurred.").

Furthermore, the ALJ adequately accounted for Plaintiff's moderate limitations in social functioning and concentration, persistence, or pace because she formulated an RFC and asked hypothetical questions that were consistent with the RFC assessment of psychological ME Dr. Carney, who *did* account for these moderate limitations. *See Milliken v. Astrue*, 397 F. App'x 218, 221–22 (7th Cir. 2010) (unpublished decision). In *Milliken*, an ME testified that despite the claimant's limitations in concentration, persistence, and pace, she could perform unskilled work tasks. *Id.* at 219–20. The ALJ's RFC assessment and hypothetical

questions to the VE, however, did not explicitly address the claimant's moderate concentration, persistence, and pace limitations. *Id.* at 221–22. Instead, the ALJ limited the claimant to unskilled work, which the claimant argued did not sufficiently account for her moderate mental limitations. *Id.* at 221. The Seventh Circuit disagreed. It found that the ME, by testifying that the claimant could perform unskilled work despite her limitations in concentration, persistence, and pace, "effectively translated" his opinion regarding these limitations into an RFC assessment. *Id.* at 221–22. Then, by asking a hypothetical question limited to unskilled work, the ALJ incorporated the ME's assessment that the claimant could perform unskilled work despite her moderate mental limitations. *Id.* at 222. This sufficiently accounted for the claimant's limitations in concentration, persistence, and pace. *Id.*

Similarly, ME Dr. Carney, who recognized Plaintiff's moderate limitations in social functioning and concentration, persistence, or pace, testified that Plaintiff was restricted to very occasional contact with the public, occasional contact with supervisors, simple tasks, and a low-stress work setting. (R. 95-97.) By doing so, Dr. Carney "effectively translated" his opinion regarding the moderate mental limitations at issue into an RFC assessment. *See Milliken*, 397 F. App'x at 221. The ALJ's mental RFC assessment likewise limits Plaintiff to simple tasks (although also routine and repetitive) and occasional contact with the public and supervisors. (R. 24, 97.) The mental RFC accommodates Dr. Carney's low-stress work setting restriction by prohibiting fast-paced production requirements, minimizing changes

in the work setting, and limiting Plaintiff to simple work-related decision making. (*Id.*) The ALJ's hypothetical questions, in turn, incorporated these mental RFC restrictions. (R. 101, 103–04.) Thus, by crediting the mental RFC restrictions described by Dr. Carney, who acknowledged Plaintiff's moderate limitations in social functioning and concentration, persistence, or pace, the ALJ adequately accounted for these limitations. *See Milliken*, 397 F. App'x at 222. Therefore, Plaintiff has failed to show any error in the ALJ's mental RFC assessment that requires remand.

### C.  <u>Credibility</u>

Finally, Plaintiff argues that the ALJ improperly assessed her subjective complaints, which the ALJ found "not entirely credible." (R. 33.) An ALJ must give specific reasons for discrediting a claimant. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Those reasons must be supported by record evidence and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 539–40 (internal quotations omitted); *see* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[5]

---

[5] In 2016, the SSA rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (Mar. 16, 2016). Although the ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," it does not alter their duty "to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). The ALJ issued her opinion on July 30, 2015. (R. 37.) Therefore, contrary to Plaintiff's argument, the ALJ's finding was subject to SSR 96-7p, not

Nonetheless, this Court defers to an ALJ's credibility determination unless it is "patently wrong." *Schmidt*, 496 F.3d at 843. And contrary to Plaintiff's contention, the Seventh Circuit's "patently wrong" standard continues to govern the Court's review of an ALJ's credibility determination even after the issuance of SSR 16-3p. *See, e.g.*, *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 790–92 (N.D. Ill. 2017); *Spaulding v. Berryhill*, No. 16 C 6298, 2017 WL 3922878, at *10 (N.D. Ill. Sept. 7, 2017) (citing cases); *Bellamy v. Berryhill*, No. 2:17-cv-02013, 2018 WL 2077734, at *3 (C.D. Ill. Mar. 8, 2018).

Here, the ALJ's credibility determination, as Plaintiff points out, relied on inconsistent statements made to Plaintiff's treating physicians, the SSA, and to the ALJ at the administrative hearing. Inconsistencies in the evidence can support an ALJ's decision to find a claimant less credible. *See, e.g.*, *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (upholding credibility determination based on various inconsistencies between the plaintiff's alleged symptoms and the other evidence); *Michalec v. Colvin*, 629 F. App'x 771, 775 (7th Cir. 2015) (unpublished decision) ("In light of the inconsistencies between Michalec's statements to his doctors and his testimony at the hearing, Michalec has not shown that the ALJ's credibility assessment is patently erroneous."). And with one exception discussed below, Plaintiff does not contest the existence of the inconsistencies identified by the ALJ

---

SSR 16-3p. Nonetheless, the Court recognizes that SSR 16-3p and SSR 96-7p are not substantively different, see *Cole*, 831 F.3d at 412, and it will refer to the ALJ's evaluation of Plaintiff's subjective allegations as a "credibility" determination.

or the ALJ's reliance on them to assess her credibility. This alone weighs against overturning the ALJ's credibility determination.

The only alleged inconsistency disputed by Plaintiff relates to her statements about driving. Although the ALJ recognized that Plaintiff and Ms. Nathaniel claimed that Plaintiff does not drive, she identified a December 2013 treatment note reporting that "[w]hen driving, [Plaintiff] is easily triggered and argues with other drivers frequently." (R. 30–31, 1407.) The ALJ believed this was one of several purported inconsistencies that "cast great doubt upon [Plaintiff's] credibility." (R. 30–31.) According to Plaintiff, however, this note is not inconsistent with her driving claims, because it explains that anxiety and anger *prevent* her from driving.

The Court's role is not to reinterpret this evidence, but to merely ensure that the ALJ's interpretation was reasonable. *See Elder*, 529 F.3d at 413. Even if Plaintiff's interpretation of the December 2013 treatment note is the correct one, that does not make the ALJ's interpretation unreasonable. To the contrary, the ALJ could reasonably have interpreted the note as evidence that, as of December 2013, Plaintiff drove *despite* being "easily triggered" and arguing frequently with other drivers. (R. 1407.) And the statement is phrased in the present tense, which suggests that Plaintiff was still driving when the note was recorded. Because the ALJ's apparent interpretation of the December 2013 treatment note was reasonable, her finding that Plaintiff offered inconsistent statements about driving was not erroneous.

As noted above, Plaintiff does not otherwise contest the existence of the inconsistencies identified by the ALJ or the ALJ's reliance on them to determine credibility. Instead, Plaintiff contends that *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), required the ALJ to provide her or Ms. Nathaniel an opportunity to explain these inconsistencies. Plaintiff's reliance on *Craft*, though, is misplaced. In *Craft*, the Seventh Circuit, relying upon SSR 96-7p, explained that before an ALJ can make an adverse credibility finding based on a claimant's failure to seek medical treatment, she is required to "explore[ ] the claimant's explanations as to the lack of medical care." 539 F.3d at 678–79. Here, however, Plaintiff does not contend that any aspect of the ALJ's credibility finding is based on a lack of medical treatment. Nor did *Craft* even address a credibility determination based on inconsistent statements. As such, *Craft* did not require the ALJ to give Plaintiff the chance to explain away every inconsistent statement or allegation in the record.

Plaintiff's last challenge regarding credibility faults the ALJ for discounting Plaintiff's limitations based on evidence related to her taking of classes through the University of Phoenix. Specifically, Plaintiff argues that the ALJ failed to explain how Plaintiff's limited class load, low grade point average, difficulty sitting longer than thirty minutes during classes, and problems getting along with other students warranted an adverse credibility determination.[6] The ALJ, however, was not required to discuss every University of Phoenix-related piece of evidence in

___

[6] Although Plaintiff also asserts that the ALJ should have requested records from the University of Phoenix, she fails to explain how these records would have affected to the ALJ's credibility determination.

determining Plaintiff's credibility. *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013) (unpublished decision). Nor does Plaintiff's apparent disagreement with the ALJ's decision to emphasize other aspects of the University of Phoenix evidence over the above-identified evidence constitute grounds for reversal. Such a decision simply reflects the ALJ's weighing of the evidence, which this Court will not disturb on appeal. *See Clifford*, 227 F.3d at 869 (reviewing courts "do not reweigh the evidence").

Moreover, the ALJ explained why the University of Phoenix evidence she *did* rely upon supported her credibility determination. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). For instance, the ALJ explained that Plaintiff's ability to attend, in person and without accommodation, five-to-six-week classes that required substantial concentration and out of class work cast doubt on her reports of extremely limited activities of daily living. (R. 23, 31–32.) The ALJ also noted that it was likely that Plaintiff attended these classes unaccompanied, which contradicted her report that she never goes out alone. (R. 31.) These explanations sufficiently support the ALJ's treatment of the University of Phoenix evidence in her credibility assessment.

Ultimately, Plaintiff not shown that the ALJ's evaluation of her credibility based on her inconsistent statements was "patently wrong." Accordingly, the Court upholds the ALJ's credibility determination. *See Schmidt*, 496 F.3d at 843.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.


**SO ORDERED.**                    **ENTERED:**


**DATE:**    <u>November 7, 2018</u>    _____
                                       **HON. MARIA VALDEZ**
                                       **United States Magistrate Judge**